## **§ 362 INFORMATION SHEET**

| | | |
|---|---|---|
| THE POWELL LITIGATION GROUP, P.C. | BK - S-12-15555-MKN | |
| DEBTOR | BANKRUPTCY # | MOTION # |

| | |
|---|---|
| BANK OF NEVADA | 7 |
| MOVANT | CHAPTER |

### *Certification of Attempt to Resolve the Matter Without Court Action*

*Moving counsel hereby certifies that pursuant to the requirement of LR 4001(a)(5), an attempt has been made to resolve the matter without court action, but movant has been unable to do so.*

Date: Oct. 18, 2012          Signature: _____
                                          *Attorney for Movant*

PROPERTY INVOLVED IN THIS MOTION: Collateral consisting of all accounts, including funds held in IOLTA account, arsing from BAnk's properly perfected security interest.

NOTICE SERVED ON: 10/18/2012
DEBTOR(S)  ☒    DEBTOR(S)' COUNSEL  ☒    TRUSTEE  ☒
DATE OF SERVICE: 10/18/2012

| MOVING PARTY'S CONTENTIONS: | DEBTOR'S CONTENTIONS: |
|---|---|
| THE EXTENT and PRIORTY of LIENS: | THE EXTENT and PRIORTY of LIENS: |
| 1ST  Terminate the Stay under section 362(d)(1) for payment of $220,021.19 from to Bank, as Collateral consisting of accounts, including IOLTA account, is fully encumbered by the Bank's properly perfected, first position security interest per UCC-1s. | 1ST |
| 2ND  Waive the 14-Day Stay Under Rule 4001(a)(3) | 2ND |
| 3RD | 3RD |
| 4TH | 4TH |
| OTHER | OTHER |
| TOTAL ENCUMBRANCES: | TOTAL ENCUMBRANCES: |
| APPRAISAL or OPINION as to VALUE: Not applicable | APPRAISAL or OPINION as to VALUE: |

| TERMS of MOVANT'S CONTRACT with the DEBTOR(S):: | DEBTOR'S OFFER OF "ADEQUATE PROTECTION" for MOVANT:: |
|---|---|
| AMOUNT OF NOTE: $1,921,424.28 | |
| INTEREST RATE: 7.00% per annum | |
| DURATION: 36 monts | SPECIAL CIRCUMSTANCES: |
| PAYMENT PER MO.: 35 payments at $38,146.85 and 1 irregular payment at $889,172.62 | |
| DATE OF DEFAULT: February 1, 2012 | SUBMITTED BY: |
| AMOUNT IN ARREARS: $1,861,128.26 | |
| DATE OF NOTICE OF DEFAULT: March 14, 2012 | Signature: |
| SPECIAL CIRCUMSTANCES | |

07397-02.001/961646

| | |
|---|---|
| 1 | Richard F. Holley, Esq. (NV Bar No. 3077) |
| | Email: rholley@nevadafirm.com |
| 2 | Ogonna M. Atamoh, Esq. (NV Bar No. 7589)     E-filed on: October 18, 2012 |
| | Email: oatamoh@nevadafirm.com |
| 3 | COTTON, DRIGGS, WALCH, |
| | HOLLEY, WOLOSON & THOMPSON |
| 4 | 400 South Fourth Street, Third Floor |
| | Las Vegas, Nevada 89101 |
| 5 | Telephone:     702/791-0308 |
| | Facsimile:     702/791-1912 |
| 6 | *Attorneys for Bank of Nevada* |

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re:

THE POWELL LITIGATION GROUP, P.C.,

Debtor.

Case No. BK-S-12-15555-MKN
Chapter 7

**MOTION TO TERMINATE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(1) AND WAIVE 14-DAY STAY UNDER FRBP 4001(a)(3)**

Date of Hearing:    November 20, 2012
Time of Hearing:    10:00 a.m.
Place: Courtroom No. 2, Third Floor
    Foley Federal Building
    300 Las Vegas Blvd., S.
    Las Vegas, NV 89101

Judge: Hon. Mike K. Nakagawa

Secured Creditor Bank of Nevada (the "Bank"), through their counsel, Richard F. Holley, Esq. and Ogonna M. Atamoh, Esq. of the law firm of Cotton, Driggs, Walch, Holley, Woloson & Thompson, hereby files this Motion to Terminate the Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1) and Waive 14-Day Stay Under FRBP 4001(a)(3). (the "Motion").

This Motion is based on the following grounds and the following reasons: (1) the Bank seeks an order terminating the automatic stay under Section 362(d)(1) for cause to allow the Trustee to pay the Bank of $220,021.19 from the funds in the amount of $2,615,823.64 currently held in the IOLTA Account arising from the Bank's properly perfected, first position security interest in a portion of the funds held in the IOLTA Account; (2) according to the Trustee's accounting, of the $2,615,823.64 held in the IOLTA account, $416,521.01 in costs and $96,282.28 in fees are

07397-02.001/961747.doc

owing to Powell Litigation (the "PLG Funds"), a portion of which funds are subject to interpleader actions currently pending in State Court; (3) of the PLG Funds, $220,021.19 of the funds are not subject to interpleader actions, consisting of $190,651.31 of Costs due to Powell Litigation and $29,369.88 due and owing to Powell Litigation for Fees. The Bank is seeking stay termination to allow payment to the Bank from the IOLTA Account in the amount of $220,021.19, pursuant to the Bank's properly perfected, first position security interest in the funds; and (4) separate and apart from the IOLTA Account, the Trustee is holding $271,427.57 in the Debtor's operating account, which the Trustee is using in part to administer the estate, which funds the Bank is not seeking as part of the stay termination Motion. The Bank is not waiving its rights to the funds in the Operating Account or any of the other funds remaining in the IOLTA Account to which medical providers or patients are not entitled.

This Motion is based upon the pleadings and records on file herein, the Memorandum of Points and Authorities set forth below and the exhibits attached hereto, and the Declaration of Conrad Noriega (the "Noriega Declaration"), a Vice President with Bank in the Legal and Recovery Department, and the Declaration of Ogonna M. Atamoh, Esq. (the "Atamoh Declaration"), one of the Bank's attorneys, filed separately and concurrently with the Court pursuant to Rule 9014(c)(2) of the Local Rules of Bankruptcy Practice, all papers, and pleadings on file with this Court, and any oral argument entertained by this Court in connection with the Motion.

DATED this 18th day of October, 2012

COTTON, DRIGGS, WALCH,
HOLLEY, WOLOSON & THOMPSON

_____
Richard F. Holley, Esq. (NV Bar No. 3077)
Ogonna M. Atamoh, Esq. (NV Bar No. 7589)
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
Telephone: 702/791-0308
Facsimile: 702/791-1912

*Attorneys for Bank of Nevada*

07397-02.001/961747.doc

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Debtor borrowed nearly $2 million from the Bank to fund the personal injury litigation to pay for litigation fees and costs. The Bank holds a first position, properly perfected security interest in the settlement proceeds held in the IOLTA account derived from the litigations commenced by the Debtor, as evidenced by the Security Agreements and UCC-1 Financial Statements filed with the Nevada Secretary of State on May 13, 2008. The Bank commenced a State Court action for the appointment of receiver over Powell Litigation, as Powell Litigation had failed and/or refused to make any payments to the Bank under the Loan Documents (defined below). One day before the hearing on the Motion to Appoint Receiver was held, Powell Litigation filed for Chapter 7 Bankruptcy relief.

David A. Rosenberg was appointed the Chapter 7 Trustee over the Powell Litigation bankruptcy case. The Trustee prepared an accounting to determine which funds belonged to the medical providers, the clients, and the Glen Lerner Firm and the Bank arising out of the retainer agreements and fee splitting agreement with the Glen Lerner Firm and the Bank. In September 2012, the Trustee provided the Bank with an accounting of the $2,615,823.64 in funds held in the IOLTA account, delineating the funds attributable to medical providers, the clients, the Glen Lerner Firm and the Bank. Of the $2,615,823.64 in the IOLTA account, the Trustee's accounting reflects that there are $416,521.01 in costs due and owing to Powell Litigation and $96,282.28 in fees owing to Powell Litigation (the "PLG Funds"), a portion of which are subject to interpleader actions currently pending in State Court.

Of the PLG Funds, $220,021.19 of the funds are not subject to interpleader actions, consisting of $190,651.31 of Costs due to Powell Litigation and $29,369.88 due and owing to Powell Litigation for Fees. The Bank is seeking an order terminating the automatic stay for cause under Section 362(d)(1) to allow the Trustee to pay the Bank a portion of the funds held in the IOLTA Account attributable to the Bank in the amount of $220,021.19, pursuant to the Bank's properly perfected security interest in the funds.

This is a Chapter 7 case, and the Bank's Collateral is fully encumbered, leaving no benefit to the estate in connection with the PLG Funds designated in the Trustee's Report as Powell Litigation funds. No other creditors are entitled to receive any portion of the funds designated in the Trustee's Report as the PLG Funds, consisting of $416,521.01 in costs and $96,282.28 in fees owing to Powell Litigation, to which the Bank is entitled as a properly perfected secured creditor. Additionally, the waiver of the 14-day stay of the order terminating the stay is appropriate, as the Bank is only seeking a partial payment of $220,021.19 from the IOLTA Account to which no other creditor is entitled, resulting in a balance of $292,782.10 of the funds designated in the Trustee's Report as PLG Funds, and leaving an overall balance of $2,395,802.45 in the IOLTA Account.

## II. STATEMENT OF FACTS

### THE LOAN TRANSACTION

1. On or about September 3, 2008, Paul D. Powell ("Powell") and Bank entered into a Business Loan Agreement for a loan to Powell in the amount of $300,000.00 ("Loan") for business operations, with a maturity date of September 3, 2009. A true and correct copy of the September 3, 2008 Business Loan Agreement and Disbursement Request and Authorization is attached to the Noriega Declaration as **Exhibit "1"**. The Loan was extended by Bank to Powell to finance personal injury litigation by Powell.

2. On or about September 3, 2008, Powell executed a Promissory Note in favor of Bank in the principal amount of $300,000.00 (as amended or supplemented, the "Note"). A true and correct copy of the Promissory Note is attached to the Noriega Declaration as **Exhibit "2"**.

3. Pursuant to the terms of the Note, the unpaid principal balance bears interest at a variable rate of 1.500 percentage points over the Prime Rate as published in the Wall Street Journal (the "Index"). The initial and floor interest rate was 7.5% per annum based on a 360-day year. The Note provides a single payment of the entire unpaid principal balance, plus accrued interest at maturity and for monthly payments of all accrued interest beginning October 3, 2008. The maturity date under the Note was September 3, 2009 ("Maturity Date").

07397-02.001/961747.doc

4.  On or about October 13, 2008, Borrower and Bank renewed the loan in the amount of $300,000.00, based upon the Note. Borrower and Bank also entered into a Change in Terms Agreement modifying the Note. The Note was modified to extend the Maturity Date to April 13, 2014, to discontinue the revolving line of credit feature, to change the borrower's name to Powell Litigation, to add collateral, to add the guaranty of Powell, to change the payment schedule to interest only payments from November 13, 2008 to April 13, 2009 and then payments of principal and interest each month beginning May 13, 2009, and to raise the floor interest rate to 8.00%. A true and correct copy of the October 13, 2008 Business Loan Agreement, Disbursement Request and Authorization, and Change in Terms Agreement is attached to the Noriega Declaration as **Exhibit "3"**.

5.  On or about February 27, 2009, Borrower and Bank renewed the loan and increased the principal amount to $500,000.00, based upon the Note. Borrower and Bank also entered into a Change in Terms Agreement modifying the Note. The Note was modified to increase the principal amount to $500,000.00, to change the payment schedule to interest only payments from March 13, 2009 to April 13, 2009 and then payments of principal and interest each month beginning May 13, 2009, and to lower the floor interest rate to 7.25%. A true and correct copy of the February 27, 2009 Business Loan Agreement, Disbursement Request and Authorization, and Change in Terms Agreement is attached to the Noriega Declaration as **Exhibit "4"**.

6.  On or about July 8, 2011, Borrower and Bank renewed the loan and increased the principal amount to $1,921,424.28, based upon the Note. Borrower and Bank also entered into a Change in Terms Agreement modifying the Note. The Note was modified to increase the outstanding principal amount to $1,921,424.28, to extend the Maturity Date to July 8, 2014, to release certain real property as collateral, to change the payment schedule to payments of principal and interest each month beginning August 8, 2011, and to change the variable interest rate to a fixed rate of 7.00% per annum on a 360-day year. A true and correct copy of the July 8, 2011 Business Loan Agreement, Disbursement Request and Authorization, and Change in Terms Agreement is attached to the Noriega Declaration as **Exhibit "5"**.

07397-02.001/961747.doc

7. To secure the Note, on or about September 3, 2008, Powell executed a Commercial Security Agreement in favor of the Bank. Also to secure the Note, on or about October 13, 2008, Borrower executed a Commercial Security Agreement in favor of the Bank. True and correct copies of the Commercial Security Agreements are attached to the Noriega Declaration as **Exhibit "6"**. The Commercial Security Agreements grant a security interest to the Bank in the following collateral (the "Collateral"):

> All Inventory, Accounts, Equipment and General Intangibles recorded on May 13, 2008 filing no. 2008015389-7 with the Nevada Secretary of State
>
> In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:
>
> (A) All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.
>
> (B) All products and produce of any of the property described in this Collateral section.
>
> (C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.
>
> (D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.
>
> (E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

8. The Bank holds a properly perfected security interest in the Collateral as evidenced by the UCC-1 Financial Statements filed with the Nevada Secretary of State on May 13, 2008, as Document No. 2008015389-7, on September 12, 2008, as Document No. 2008028251-1, on October 16, 2009 as Document No. 2008032147-6, and on May 27, 2009, as

07397-02.001/961747.doc

- 6 -

Document No. 2009013086-5. True and correct copies of the UCC-1s are attached to the Noriega Declaration as **Exhibit "7"**.[1]

9. The Loan was unconditionally guarantied by Powell pursuant to personal guaranties executed on October 13, 2008, February 27, 2009, and July 8, 2011 (collectively the "Guaranties"). True and correct copies of the Guaranties are attached to the Noriega Declaration as **Exhibit "8"**.

**THE LOAN DEFAULTS**

10. Borrower was in default under the Loan Documents by failing to pay, or cause to be paid, all of the past due amounts and cure all other defaults within the applicable cure period set forth in the Loan Documents. See Noriega Declaration.

11. After the defaults occurred, the Bank attempted to communicate with Borrower regarding the outstanding obligations owing to Bank, but after an initial meeting, Borrower failed and refused to produce promised financial statements and to respond to emails and telephone calls.

12. As a result of this lack of communication, on March 14, 2012, Bank sent to Borrower a notice of default and demand for payment letter ("Borrower Default Letter") detailing the monetary defaults under the Loan Documents. A true and correct copy of the Borrower Default Letter is attached to the Noriega Declaration as **Exhibit "9"**.

13. On March 14, 2012, Bank also sent to Powell, as the Guarantor, a notice of default and demand for payment letter as a result of Borrower's default ("Guarantor Default Letter"). A true and correct copy of the Guarantor Default Letter is attached to the Noriega Declaration as **Exhibit "10"**.

14. Notwithstanding the Borrower Default Letter and Guarantor Default Letter, Borrower and Powell failed and refused to pay the outstanding indebtedness, to provide any of the requested information, or to pay requested past due payments that I was willing to

---

[1] The Note, Business Loan Agreements, Disbursement Request and Authorizations, Changes In Terms Agreements, Commercial Security Agreements, UCC-1 Financial Statements, and all other loan documents evidencing, securing or modifying the Loan are referred to collectively as the "Loan Documents".

- 7 -

07397-02.001/961747.doc

1  recommend the Bank accept for an extension of the demand letter deadlines to allow more time
2  to work out a possible solution.

**STATE COURT ACTION TO APPOINT RECEIVER**

4  15.   On April 13, 2012, the Bank commenced an action in State Court in the Business Court Division of the Eighth Judicial District Court, Clark County, Nevada, for the appointment of a receiver.

7  16.   On April 13, 2012, the Bank filed a Motion for Appointment of Receiver, or in the alternative, for Temporary Restraining Order, Preliminary and Injunctive Relief and Prejudgment Writ of Possession, which hearing was scheduled to be heard on April 24, 2012, and continued to May 10, 2012, due to a department reassignment.

**BANKRUPTCY**

12  17.   On May 9, 2012 (the "Petition Date"), one day before the hearing on the Motion to Appoint Receiver, Powell Litigation filed a Chapter 7 bankruptcy petition for relief captioned *In re Powell Litigation Group, P.C.* (Case No. BK-S-12-15555-MKN) (the "PLG Bankruptcy"), currently pending in the United States Bankruptcy Court for the District of Nevada.

16  18.   On October 10, 2012, David A. Rosenberg, the Chapter 7 Trustee (the "Trustee"), filed a Trustee's Notice of Assets and Notice to File Proof of Claim [Dkt. No. 83].

18  19.   On October 11, 2012, the Bank filed a Proof of Claim [POC # 8], identifying its claim as of the Petition Date to be $1,861,128.26, the total unpaid principal, interest, and late charges (exclusive of legal fees, costs and other charges and reserves) required under the Loan Documents are as follows:

| | |
|---|---|
| Current Outstanding Principal: | $1,786,468.53 |
| Accrued Interest: | $ 66,484.11 |
| Late Charges: | $ 8,128.62 |
| UCC Fee: | $      47.00 |
| Total Debt: | $1,861,128.26 |

Interest continues to accrue on the unpaid principal balance at the default rate of $595.49 per day. The daily regular interest was $347.37. See Noriega Declaration.

- 8 -

07397-02.001/961747.doc

**TRUSTEE'S ACCOUNTING**

20.     In September 2012, the Trustee prepared an accounting report of the funds held in the IOLTA account, a true and correct copy of which is attached to the Noriega Declaration as **Exhibit "11"**.

21.     According to the information provided by the Trustee, the estate currently holds $2,615,823.64[2] in the IOLTA account for reimbursement of costs in litigation financed by Bank, some of which is subject to interpleader actions pending in state court commenced at the direction of the Trustee.

22.     On September 26, 2012, counsel for the Bank met with counsel for the Trustee, Howard Kim, Esq., and Cody Sutton, who is employed by the Trustee, as well as counsel for the Glen Lerner Firm, Brigid Higgins, Esq. to receive clarification on the Trustee's accounting of the funds held in the IOLTA account Powell Litigation received settlements from which legal fees and costs from judgments in litigation were to be paid. These settlement funds and legal fees constitute the Bank's Collateral, but Powell Litigation failed to remit payment to Bank pre-petition.

23.     Of the $2,615,823.64 in the IOLTA Account, the Trustee's accounting reflects that there are $416,521.01 in costs due and owing to Powell Litigation and $96,282.28 in fees owing to Powell Litigation (the "PLG Funds").

24.     Of the PLG Funds, $220,021.19 of the funds are not subject to interpleader actions, consisting of $190,651.31 of Costs due to Powell Litigation and $29,369.88 due and owing to Powell Litigation for Fees. A true and correct copy of the chart identifying interpleader and non-interpleader funds is attached to the Noriega Declaration as **Exhibit "12"**.

**REQUEST FOR STAY TERMINATION FOR RELEASE OF PORTION OF IOLTA FUNDS**

25.     The Bank is requesting an order terminating the automatic stay for payment in the amount of $220,021.19 to the Bank from the IOLTA Account from the $2,615,823.64 in the

---

[2] The IOLTA Account is currently held with Bank of Nevada, and as of October 18, 2012, the balance held in the IOLTA Account is $2,953,119.26. See Noriega Declaration.

- 9 -

07397-02.001/961747.doc

IOLTA Account, which funds constitute a portion of the Bank's Collateral arising from the Bank's properly perfected security interest in all of the Debtor's "Accounts".

26. The Bank's Collateral includes, but is not limited to, the IOLTA Account, as set forth in the Commercial Security Agreements and UCC-1s, attached to the Noriega Declaration as **Exhibits "6"** and **"7"**, respectively.

27. The Bank is entitled to the $416,521.01 in costs due and $96,282.28 in fees held in the IOLTA Account designated in the Trustee's Report as PLG Funds, and by way of the Motion, is currently only seeking stay termination for payment of a portion of the funds in the IOLTA Account not subject to the pending interpleading actions. See Noriega Declaration.

28. In the event the automatic stay is terminated to allow the Bank to receive partial payment of $220,021.19 from the IOLTA Account, $292,782.10 of the funds designated in the Trustee's Report as PLG funds will remain in the IOLTA Account, which remaining funds are still the subject of pending interpleader actions. See Noriega Declaration.

29. Upon resolution of the remaining interpleading actions, the Bank will renew its Motion to Terminate the Automatic Stay for payment of the remaining funds in the IOLTA Account or any other funds to which the Bank is entitled pursuant to its properly perfected security interest. See Noriega Declaration.

**TRUSTEE HOLDING $271,427.57 IN OPERATING ACCOUNT**

30. The Trustee, through his counsel, reported that he is currently holding $271,427.57 in the Debtor's Operating Account, a portion of which is to be used by the Trustee to administer the estate, including, but not limited to, the pending interpleader actions, and any future preference and fraudulent transfer actions the estate may commence. See Atamoh Declaration.

. . .

. . .

. . .

. . .

. . .

07397-02.001/961747.doc

# III.

# LEGAL ARGUMENT

### A. Cause Exists to Terminate the Stay Under Sections 362(d)(1) Because the Collateral is Fully Encumbered by the Bank's Properly Perfected, First Position Security Interest.

The Bank requests relief from the automatic stay pursuant to section 362(d)(1) because cause exists to terminate stay. Cause exists to terminate the stay under Section 362(d)(1) because the Collateral at issue, consisting of all "accounts" of Powell Litigation, which includes the IOLTA Account that is the subject of this Motion, is fully encumbered by the Bank's properly perfected, first position security interest. Section 362(d)(1) provides as follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

This is a Chapter 7 case, and the Bank's Collateral is fully encumbered, leaving no benefit to the estate in connection with the PLG Funds designated in the Trustee's Report as Powell Litigation funds. As set forth in greater detail in the Noriega Declaration, there is no benefit to the estate for the Chapter 7 Trustee to liquidate and administer the Collateral, because the Bank holds a properly perfected security interest in the Collateral consisting of Powell Litigation's "accounts", which includes the funds in the IOLTA Account not attributable to medical providers and patients. See Noriega Declaration.

No other creditors are entitled to receive any portion of the funds designated in the Trustee's Report as the PLG Funds, consisting of $416,521.01 in costs and $96,282.28 in fees owing to Powell Litigation, to which the Bank is entitled as a properly perfected secured creditor. See Noriega Declaration. Because no other creditors are entitled to any portion of the PLG Funds designated in the Trustee's Report, and there are sufficient funds in the Operating Account to provide the Trustee with funds to administer the case and commence future litigation in the bankruptcy case, the Bank's request to terminate the automatic stay to allow payment to

- 11 -

07397-02.001/961747.doc

the Bank of a portion of the IOLTA Account not subject to any interpleader actions is appropriate at this time. See Noriega Declaration.

The Bank seeks an order from this Court terminating the automatic stay to allow the Trustee to pay the Bank a partial payment of $220,021.19 from the IOLTA Account, leaving a balance of $292,782.10 of the funds designated in the Trustee's Report as PLG Funds. The balance of $292,782.10 will remain in the IOLTA Account subject to the resolution of pending interpleader actions. See Noriega Declaration. Thus, cause exists to terminate the stay under Section 362(d)(1).[3]

### B. Cause Exists to Waive the 14-Day Stay Under Rule 4001(a)(3).

In addition to stay termination for payment of a portion of the Bank's Collateral, the Bank also seeks the waiver of the 14-Day stay of the order terminating the stay under Rule 4001(a)(3). There is no legitimate reason for further delay in the Trustee's payment to the Bank, where there are no competing claims to the Bank's funds in the IOLTA Account as designated in the Trustee's Report as PLG Funds. See Noriega Declaration. The waiver of the 14-day stay of the order terminating the stay is appropriate, as the Bank is only seeking a partial payment of $220,021.19 from the IOLTA Account to which no other creditor is entitled, resulting in a balance of $292,782.10 of the funds designated in the Trustee's Report as PLG Funds, and leaving an overall balance of $2,395,802.45 in the IOLTA Account. See Noriega Declaration. Because this is a Chapter 7 case, and there is no reorganization in the Debtor's case, the Bank requests that this Court waive the 14-Day stay under Rule 4001(a)(3), as there appears to be no reason to stay the order terminating the automatic stay. Under these circumstances, waiver of the 14-day stay is appropriate.

. . .

. . .

. . .

---

[3] The Bank is not waiving its rights to the funds in the Operating Account, as the Bank's Security Agreement and filed UCC-1s entitle the Bank to a properly perfected, first position, security interest to all "Accounts" of PLG as Collateral, which accounts include the Operating Account and the IOLTA Account. See Noriega Declaration.

- 12 -

07397-02.001/961747.doc

### III. CONCLUSION

Based upon the foregoing, cause exists to terminate the stay under Sections 362(d)(1), and for an order allowing the Bank to receive $220,021.19 from the IOLTA Account, which funds constitute a portion of the Bank's Collateral pursuant to a properly perfected, first position security interest as set forth in the Commercial Security Agreements and UCC-1s. The Bank also seeks an order for the waiver of the 14-day stay of the order terminating the stay under Rule 4001(a)(3).

DATED this 18th day of October, 2012.

COTTON, DRIGGS, WALCH,
HOLLEY, WOLOSON & THOMPSON

_____
Richard F. Holley, Esq. (NV Bar No. 3077)
Ogonna M. Atamoh, Esq. (NV Bar No. 7589)
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
Telephone: 702/791-0308
Facsimile: 702/791-1912

*Attorneys for Bank of Nevada*

- 13 -

07397-02.001/961747.doc